UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                 )
AZOROH et al.,                   )
                                 )
          Plaintiffs,            )
                                 )   Civil Action No. 14-1695
     v.                          )
                                 )
AUTOMOBILE INS. CO. of           )
HARTFORD, CT.,                   )
                                 )
          Defendant.             )
_____)
```

**MEMORANDUM AND ORDER**

I.  **Introduction**

Christopher and Ngozi Azoroh ("Plaintiffs") own a rental property located at 133 Longfellow Street, N.W., Washington, D.C. First Am. Compl. ("Am. Compl."), ECF No. 13 ¶ 1. Plaintiffs allege that their property was damaged by a windstorm in 2011. *Id.* ¶ 15. The Automobile Insurance Company of Hartford Connecticut ("Hartford" or "Defendant") insured Plaintiffs' property. *Id.* ¶ 8.[1] Hartford denied Plaintiffs' claim in January 2012 and Plaintiffs filed this lawsuit in October 2014 alleging the denial constituted breach of contract and breach of the implied obligation of good faith and fair dealing. *Id.* at ¶¶ 19, 25-33. On February 23, 2015, Defendant filed a Motion for

---

[1] Plaintiffs incorrectly refers to Defendant as "Travelers" throughout their pleadings. Def.'s Answer, ECF No. 14 at 1. The Court will refer to Defendant as "Hartford."

1

Judgment on the Pleadings, arguing that (a) there is no coverage obligation because the damages suffered by Plaintiffs were not caused by a peril insured by the policy; (b) there is no coverage obligation under the policy because the Plaintiffs failed to comply with the two-year suit limitation provision; and (c) there was no breach of any covenant of good faith and fair dealing because Hartford did not breach any of the provisions, terms or conditions of the policy. Def.'s Mem. Supp., ECF No. 15-2 at 1-8.[2] Upon consideration of the Motion, the response and reply thereto, and for reasons discussed below, the Defendant's Motion is **GRANTED**.

II. Background

Plaintiffs leased apartments on three floors of their property under the "Section 8" program, which is supervised by the United States Department of Housing and Urban Development ("HUD") and the District of Columbia Housing Authority ("DCHA"). *Id.* ¶ 12. Pursuant to the HUD/DCHA requirements, Plaintiffs' property was inspected by the government in June 2011 and received a passing grade. *Id.* ¶ 14.

---

[2] In May 2015, the parties agreed to the appointment of a mediator to assist in settlement discussions. *See* May 27, 2015 Minute Order. On September 30, 2015, the parties informed the Court that settlement was unlikely and that the parties agreed the Court should rule on Defendant's pending Motion for Judgment on the Pleadings. Parties' Status Report, ECF No. 32.

On September 8, 2011, a windstorm moved through the D.C. area. *Id.* ¶ 15. Plaintiffs immediately submitted a claim to Hartford, reporting damage to their property that they believed was caused by the storm. *Id.* Defendant's claims' adjuster Deanna Carroll ("Ms. Carroll") concluded that the "significant water and mold damage on all three levels of [Plaintiffs'] rental property" was the result of "wear and tear" and "splits in the roof membrane that occurred over a period of time." *Id.* ¶ 20. Ms. Carrol denied Plaintiffs' claim as excluded under Section 1 of the policy, which states:

> Windstorm or hail. This peril does not include loss to the inside of a building or the property contained in a building caused by rain, snow, sand or dust **unless the direct force of wind or hail damages the building, causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.**

*Id.* (citing Hartford denial letter, dated January 4, 2012) (emphasis added).

In June 2014, Plaintiffs hired an engineer to complete an inspection of the damaged property. *Id.* ¶ 16. The engineer concluded that the damage to the roof and roof sheathing "was most likely caused by a pointed instrument being pushed up against the sheathing from the interior." *Id.* ¶ 17. Plaintiffs allege that "no indication or evidence exist[s], which indicates that the said actions of this unknown third-party person were

3

done for purposes of vandalism or mischief, nor can Defendant [] prove or show any such malicious intent by said unknown third-party." *Id.* ¶ 18.

### III. Standard of Review

#### a. Motion for Judgment on the Pleadings

A Rule 12(c) motion is "functionally equivalent" to a Rule 12(b)(6) motion to dismiss and governed by the same standard. *Rollins v. Wachenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While detailed factual allegations are not necessary, plaintiff must plead enough facts "to raise a right to relief above the speculative level." *Id.*

"The court is limited to considering acts alleged in the complaint, and documents attached to or incorporated by reference in the complaint, matters of which the court may take judicial notice, and matters of public record." *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 59 (D.D.C. 2007). The Court must construe the complaint liberally in plaintiff's favor

and grant plaintiff the benefit of all reasonable inferences deriving from the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court must not accept plaintiff's inferences that are "unsupported by the facts set out in the complaint." *Id.* "Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV.  Analysis

Defendant argues that Plaintiffs' claims should be dismissed due to Plaintiffs' failure to file this action within two years from the date of loss, as required under the plain language of Plaintiffs' insurance policy. Def.'s Mem. Supp. at 4. Plaintiffs maintain that application of the discovery rule means that the statute of limitations on their claim would not begin to run until June 23, 2014. Pl.'s Mem. Opp., ECF No. 18 at 8.

Section I of Plaintiffs' insurance policy states:

> **7. Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy **and the action is started within two years after the date of loss.**

Def.'s Mem. Supp. at 3 (emphasis added).

Unambiguous suit limitation provisions included in insurance policies are consistently enforced. *Martinez v. Hartford Cas. Ins. Co.*, 429 F. Supp. 2d 52, 61 (D.D.C. 2006) (upholding a two-year limitations period found in the insurance policy, noting that "[c]ontractual provisions limiting the period within which insurance policy-holders may validly initiate a lawsuit are generally enforceable under District of Columbia law."); *Kron v. Young & Simon, Inc.*, 265 A.2d 293, 294-95 (D.C. 1970) (upholding a one-year limitations period found within an insurance policy).

Plaintiffs do not dispute that they filed this action three years after the date of loss. *See* Notice of Removal, ECF No. 1. As such, Plaintiffs filed suit one year after the two-year policy limitation expired. As such, the terms of the policy bar this action because Plaintiffs' complaint was not timely filed. The language of policy limitation is unambiguous, and Plaintiffs do not argue otherwise. Rather, Plaintiffs' argument against dismissal centers on application of the discovery rule in an attempt to circumvent the clear and unambiguous language of the insurance policy. Pls.' Mem. Opp'n at 2-4.

The discovery rule is generally applied to toll a statute of limitations when the relationship between the injury and the wrongful conduct is obscure and there is a need to protect the interests of the injured party. *Doe v. Medlantic Health Care*

6

*Group, Inc.*, 814 A.2d 939, 945 (D.C. 2003); *see also Moore v. Dist. of Columbia*, 445 Fed. Appx. 365, 366 (D.C. Cir. 2011) ("Under the discovery rule, a limitations period does not run until the injured party 'knows, or with the exercise of reasonable diligence would have known, of some injury, its cause-in-fact, and some evidence of wrongdoing.'") (citations omitted).

Plaintiffs argue that under the discovery rule, the two-year contractual limitation to bring their claim "did not begin to run until June 24, 2014, with *that* being when the Plaintiffs could finally afford to pay for, then obtain, an in-depth investigative report from their own privately retained engineering exert . . ." Pls.' Mem. Opp'n. at 3. Plaintiffs' argument fails for at least two reasons.[3]

First, although the District of Columbia has yet to explicitly rule on whether the discovery rule applies to contractual limitations provisions, other courts have held that the discovery rule does not apply to unambiguous contractual limitations provisions that clearly identify the time from which

---

[3] Plaintiffs' assertion that consideration of when they were able to afford an independent inspection of their property should extend the suit limitation included in their insurance policy is rejected as baseless. *Martinez v. Hartford Cas. Ins. Co.*, 429 F. Supp. 2d 52, 60 (D.D.C. 2006) ("The purpose of contractual limitations provisions is to prevent the insured from engaging in unreasonable delay in proceeding to enforce or pursue the claim so that insurers may otherwise be protected.")

7

the limitations period begins to run. *See Osmic v. Nationwide Agribusiness In. Co.*, 841 N.W. 2d 853, 859 n.1 (Iowa 2014) (denying application of the discovery rule and stating that an "insurance company has the ability . . . to clearly articulate the applicable limitations period for claims . . . and the event upon which the limitations period begins to run."); *United Techs. Auto. Sys. v. Affiliated FM Ins. Co.*, 725 N.E.2d 871, 875 (Ind. Ct. App. 2000) (declining to adopt a discovery rule in insurance coverage cases); *Caln Village Assocs., L.P. v. Home Indem. Co.*, 75 F. Supp. 2d 404, 413 (E.D. Pa. 1999) (denying application of the discovery rule where insurance policy contained an unambiguous two-year suit limitation). Plaintiff cites no legal authority for the proposition that the discovery rule should apply when a contractual limitation period is plain and unambiguous.[4]

Second, even if the discovery rule could be applied to this case, the engineer's report obtained by Plaintiffs does nothing to show that Hartford wrongfully denied their claim. In fact, Plaintiffs' engineering expert supports Hartford's claim denial.

---

[4] Moreover, Plaintiffs fail to explain why, even if the discovery rule could be applied to contractual limitation cases, it should be applied to this case where the facts indicate that the alleged injury was not hidden or obscure. Indeed, Plaintiffs submitted their claim for damage immediately after the storm. Am. Comp. ¶¶ 6-7. Thus, there is no basis for application of the discovery rule, even if it were permitted in contractual limitation cases.

8

Plaintiffs do not dispute that their insurance policy only covers storm damage where the "direct force of wind or hail damages the building . . ." Am. Compl. ¶ 20. Ms. Carroll concluded that the damage to Plaintiffs property was from "wear and tear." *Id.* Plaintiffs' engineer concluded that the damage to the roof sheathing and roofing "was most likely caused by a pointed instrument being pushed up against the sheathing from the interior." *Id.* ¶ 17. Thus, even if Plaintiffs' action was not barred by the two-year limitation period included in the insurance policy, Plaintiffs own complaint demonstrates that Hartford properly denied Plaintiffs' claim for coverage because the relevant portion of the policy at issue only covers storm damage that is caused by "direct force of wind or hail." *Id.* ¶ 20. Plaintiff does not allege any facts that their property was damaged as a direct result of the September 2011 storm. As such, Plaintiffs have failed to state a claim for breach of contract or breach of any implied covenant of good faith and fair dealing.[5]

---

[5] Plaintiffs' only allegation against Hartford in regard to its alleged breach of good faith and fair dealing is that Defendant did not have "a reasonable basis for denying prompt and immediate payment of full benefits and compensation under the parties' contract of insurance." Am. Compl. ¶ 30. As discussed above, Hartford's denial of Plaintiffs' claim was reasonable under the parties' contract because, as affirmed by Plaintiffs' own engineering expert, there was no evidence that the damage to Plaintiffs' property was directly caused by the windstorm as required under the policy. *Id.* ¶ 17, 20.

## V. Conclusion

Because Plaintiffs failed to bring this action within the two-year limitation period included in the contract insuring their rental property, their claims are time-barred. In the alternative, Plaintiffs fail to state a claim. For these reasons, Hartford's motion for judgment on the pleadings is **GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

**Signed:   Emmet G. Sullivan
            United States District Judge
            August 4, 2016**